## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO.  5:25-CV-00695-G |
| **and** | ) ) | **JURY TRIAL DEMANDED** |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | |
| **Plaintiffs.** | ) ) | |
| **v.** | ) ) | |
| **Z3 PRODUCTIONS, LLC., an Oklahoma limited liability company, d/b/a Z3 PRO,** | ) ) ) | |
| **Defendant.** | ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Z3 PRODUCTIONS, LLC, d/b/a Z3 PRO ("Z3 PRO") ("Defendant"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 12,031,784 ("the '784 Patent") as follows:

### PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      Upon information and belief, Z3 Productions is a limited liability company existing under the laws of the state of Oklahoma, doing business as Z3 Pro, with a listed business address of 6608 N Western Ave., PMB 3307, Nichols Hills, OK 73116.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(b) and (c), 281, and 284-85.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6.      Personal jurisdiction and venue over Defendant is proper in this District because the Defendant resides in and/or have a place of business in this district.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendant resides in this district and/or have a regular and established place of business in this District.

## BACKGROUND

8.       This lawsuit asserts contributory and induced infringement of the '247 Patent. A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

9.      This lawsuit asserts contributory and induced infringement of the '784 Patent. A true and correct copy of the '784 Patent is attached hereto as Exhibit B.

10.      The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

11.    The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. The application from which the '784 Patent issued claimed a priority date of November 5, 2021.

12.    ABC is the current assignee and owner of all right, title and interest in and to the '247 Patent and the '784 Patent. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

13.    Rare Breed is the exclusive licensee of the '247 Patent and the '784 Patent.

14.    Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

15.    On April 1, 2025, counsel for ABC sent a cease and desist demand letter to Z3 Pro, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

**The Invention**

16.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

FIRST AMENDED COMPLAINT             - 3 -

17.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. The invention of the '784 Patent overcomes the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

18.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

19.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time

FIRST AMENDED COMPLAINT          - 4 -

when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

20.    In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

21.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

22.    The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

## The Infringing Devices

23.    On information and belief, Defendant has and is currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 and '784 Patents.

24.    On information and belief, Defendant sells or offers for sale the Infringing Devices via the Z3 Pro website (https://www.z3pro.com/), the Z3 Pro Facebook page

FIRST AMENDED COMPLAINT                - 5 -

(https://www.facebook.com/ze.pro.912984/), and private Facebook groups. Exemplary photographs of these are shown below:







25.     Defendant sells a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a jig used for modifying a trigger member to be specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 and '784 Patents.





26.     Defendant also separately sells or is offering to sell an "M16 Super Safety Centering Block", which are specially designed parts solely for use with a "Super Safety," and an "AR Super Safety Trigger Jig" used for modifying a trigger member to be specially cut to work with the cam, as shown below.



27.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

28.     These parts sold by Defendant are components of a patented apparatus, constituting a material part of the invention. The defendant knows that these are especially made or especially adapted for use in an infringement of the '247 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

29.     Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

30.     Defendant instructs purchasers to assemble the Infringing Devices in a way that induces infringement the '247 Patent.

31.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic

FIRST AMENDED COMPLAINT          - 9 -

with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

32.     The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

33.     Whoever makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. 35 U.S.C. § 271(a).

34.     Defendant is making, using, selling, offering for sale, and/or importing the Infringing Devices which is a direct infringement under 35 U.S.C. § 271(a) of the '784 Patent.

35.     For the reasons explained in more specificity below, Defendant's Infringing Devices each infringe at least one claim of the '247 and '784 Patents and thus, Defendant is liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

36.     In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

37.     The allegations set forth in paragraphs 1-36 are fully incorporated into this First Count for Relief.

38.     Upon information and belief, Defendant has and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

39.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

FIRST AMENDED COMPLAINT          - 10 -

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Super Safety**<br><br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).<br><br><br><br>(Plaintiff-generated renderings of Super Safety here and below) |

FIRST AMENDED COMPLAINT        - 11 -

| | |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.  **(Hammer Set Position Above)** **(Hammer Released Position Above)** |

| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (Brown) has a sear.<br><br> |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**(Trigger Member Set Position Above)** |

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position.<br><br><br><br>**(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).<br><br><br><br>**(Disconnector Hook Engaged Above)** |

FIRST AMENDED COMPLAINT        - 14 -

| | |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**(Super Safety Cam with Lobe and Lever)** |

| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |
|---|---|



**(Cam and Lobe First Position Above)**

In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.



**(Cam and Lobe Second Position Above)**

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,  |
| said cam is in said first position, | the cam is in the first position.  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.  |

and thereafter the bolt carrier moves forward into battery,

Thereafter, the bolt carrier moves forward into battery,



at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.



| | |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,<br> |
| Said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.<br> |

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm.  |

37.     When assembled as intended and instructed by the Defendant, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

38.     The Defendant instructs its customers to assemble the components it sells into an infringing combination of parts. Thus, Defendant actively contributes to and induces infringement of the '247 Patent.

39.     Accordingly, Defendant's sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

40.     Accordingly, the Defendant's making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

41.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

42.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## <u>COUNT II – DIRECT INFRINGEMENT OF THE '784 PATENT</u>

43.     The allegations set forth in paragraphs 1-42 are fully incorporated into this Second Count for Relief.

45.      Defendant has and continues to directly infringe at least Claim 1 of the '784 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components

FIRST AMENDED COMPLAINT          - 21 -

of the claimed combination (the Infringing Device) to be used without authority within the United States.

44.    An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart below:

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |



**Super Safety Installed**
(Plaintiff-generated renderings of Super Safety
here and below; Locking member and bolt carrier
shown here and below in section view for clarity)

"The Super Safety is a mechanism that actively resets
the trigger of a firearm to allow the operator to fire
again, quickly, and efficiently. The Super Safety has
been designed to operate with AR-15 pattern firearms
that use a mil-spec bolt carrier and fire control group."
Super Safety Guide at 1.

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement.  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |

| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).  |
| --- | --- |

| | |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.    **Unlocked Second Position** |

| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver.  |
|---|---|
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).  |

Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.



"The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity).     Super Safety Guide at 4.
https://www.scribd.com/document/843484122/Super-Safety-Documentation

| and a deflected position. | The lever is now shown deflected independent of the body. |
|---|---|
| |  |

47.    Claim 4 depends from claim 1 and further specifies "wherein the locking member deflectable portion pivots relative to the body portion." This creates the legal presumption that the "deflectable" limitation is not limited to pivoting movement. And thus, claim 4 is also infringed.

48.     Defendant sells a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a jig used for modifying a trigger member to be specially cut to work with the cam. These components are installed in combination with a standard AR-pattern hammer and disconnector using standard springs. *See supra,* ¶¶24-26. As such, the Defendant is selling all components of the patented combination. Accordingly, the Defendant directly infringes the '784 Patent.

49.    Accordingly, Defendant's sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(a).

50.    Accordingly, the Defendant's making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '784 Patent.

51.    The Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

52.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendant has infringed the '247 and the '784 Patents;

b.    A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 and the '784 Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.    A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 and the '784 Patents, or other such equitable relief as the Court determines is warranted;

d.    A judgment and order requiring Defendant to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '247

FIRST AMENDED COMPLAINT            - 30 -

and the '784 Patents as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.    Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: February 11, 2026

Respectfully submitted,

*s/Glenn D. Bellamy*

Glenn D. Bellamy (Ohio Bar No. 0070321)
Wood Herron & Evans, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
gbellamy@whe-law.com
Telephone: (513) 707-0243
Fax: (513) 241-6234

and

Colin H. Tucker, OBA 16325
chtucker@rodesokla.com
RHODES, HIERONYMUS, JONES, TUCKER & GABLE
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173

*Counsel for Plaintiffs*

FIRST AMENDED COMPLAINT          - 31 -

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2026, I electronically filed the foregoing with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


*s/ Glenn D. Bellamy*
Glenn D. Bellamy